UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRACY FOSTER and CORNELL FOSTER,

    Plaintiffs,

v.        Case No: 8:15-cv-1878-T-27MAP

GREEN TREE SERVICING, LLC,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** are Green Tee Servicing, LLC's Motion for Summary Judgment (Dkt. 77), Plaintiffs' response (Dkt. 48), and Defendant's reply (Dkt. 94). Upon consideration, the Motion is DENIED.

### I. BACKGROUND

The Fosters bring this action, on behalf of themselves and a class of consumers within Hillsborough County, Florida, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692c(a)(2) and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72. The Fosters allege that Green Tree attempted to collect a debt while knowing they were represented by counsel (Amended Complaint, Dkt. 25 ¶¶ 32-46), and that Green Tree has an internal policy to continue contacting a debtor knowing the debtor is represented by an attorney (*id.* ¶¶ 3, 36, 44).

Green Tree moves for summary judgment on The Fosters' individual claims on three grounds: (1) The Fosters failed to provide Green Tree with notice of these alleged violations and a reasonable opportunity to cure as required by the terms of the mortgage; (2) the alleged communications either were not debt collection communications or were permissible

communications; and (3) even if the communications violated the FDCPA or the FCCPA, Green Tree is entitled to the protections of the *bona fide* error defense.

## II. UNDISPUTED FACTS

*The Debt*

In May 2006, The Fosters executed a mortgage in favor of New Century Mortgage Corporation, the original lender, for the purchase of property in Hillsborough County, Florida to secure a Note in the amount of $267,000. (Affidavit of Stewart Derrick, Dkt. 77-1, ¶ 10, Ex. 1). In December 2008, The Fosters defaulted on their mortgage payments and have not made any payments since August 2008. (Amended Complaint, Dkt. 25, ¶ 26). On October 20, 2008, a foreclosure action was initiated by the servicer of the loan, Litton Loan Servicing, L.P. (Foreclosure Complaint, Dkt. 77-2).

On January 1, 2011, Green Tree obtained the servicing rights from Litton, and began servicing the loan. (Derrick Aff. ¶ 13). In August 2011, Green Tree was substituted as the plaintiff in the foreclosure proceedings. (Foreclosure case docket sheet, Dkt 48-6). On July 20, 2012, Green Tree was assigned the mortgage, which was publicly recorded in the Office of Public Records of Hillsborough County on August 6, 2012 at Book 21288, Page 705. (Derrick Aff. ¶¶ 11-12, Exs. 2 and 3). The Fosters were represented by attorney Christie Arkovich throughout the entire foreclosure proceeding, which ended in 2015.

*The Communications*

On May 22, 2015, Mrs. Foster found a "door hanger" flier, requesting that the Fosters contact Green Tree and providing an 800 number, stuck in the door of the Foster's house, which prompted her to call Green Tree. (Dkt. 77-6; Tracy Foster Dep., Dkt. 77-3 at 73:16-76:2). During this phone

call, although she advised that she and her husband were represented by an attorney and that Green Tree should communicate only with their attorney, she did not provide the name of their attorney or any contact information, and Green Tree did not ask for it. (Deposition of Tracy Foster, Dkt. 77-3 at 49:18-50:17). Eleven days later, on June 2, 2015, a Green Tree employee named "Vince" left a voicemail for the Fosters, which stated in its entirety "This is Vince with Green Tree, a debt collector. Please call Green Tree at 1-800-352-7751." (Derrick Aff. ¶¶ 32-35). The June 2, 2015 phone call was made in accordance with Green Tree's policy at the time, which required a ten-day waiting period before contacting a borrower after being told they were represented to obtain their attorney's contact information. (Derrick Aff. ¶¶ 34-35).

On June 4, 2015, Green Tree's foreclosure counsel provided Green Tree the name and contact information of the Foster's attorney, Christie Arkovich. (Derrick Aff. ¶ 37). Green Tree's policies and procedures require employees, after obtaining the attorney name and contact information for a borrower represented by counsel, to change the mailing address on the account to the borrower's attorney's address so that future correspondence is sent to the borrower's counsel, not to the borrower. (Derrick Aff. ¶ 36). However, this was not immediately done with the Foster account after Green Tree received the contact information for their attorney. (Derrick Aff. ¶ 38).

After being advised that the Fosters were represented, Green Tree sent them three monthly billing statements on June 15, July 16, and August 15, 2015, a Single Point of Contact Notification letter that provided contact information for their newly assigned account representative, and Loss Mitigation letters on July 13 and July 14, 2015. (Derrick Aff. ¶¶ 39-42, Exs. 8-10). On August 23, 2015, after Green Tree was served with the Complaint in this action, the address on the Foster's account was changed to the address of their new attorneys, Centrone and Shrader, and all subsequent

3

communication was sent to them. (Derrick Aff. ¶¶ 45-46).

## III. STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.' " *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). All facts are viewed and all reasonable inferences are drawn in the light most favorable to the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the initial burden of showing that there are no genuine disputes of material fact. *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories, and admissions on file to designate facts showing a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *See id.*

## IV. DISCUSSION

### A. *The Fosters were not required to give Green Tree notice and an opportunity to cure*

Green Tree contends that is entitled to summary judgment because the Fosters failed to meet

4

the contractual condition precedent in their mortgage to provide Green Tree with a reasonable opportunity to cure the alleged breach before filing this lawsuit. Paragraph 20 of the mortgage provides:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(Derrick Aff. ¶ 9, Ex. 1). While it may be that Green Tree could invoke this provision as the assignee of the mortgage, the notice and cure provision is inapplicable to Plaintiff's FDCPA and FCCPA claims. The provision requires a party to give notice to the other party "**of such alleged breach**," and an opportunity to cure that breach, before commencing or joining any judicial action. The Fosters' consumer protection claims in this judicial action, albeit related to the mortgage and Green Tree's efforts to procure mortgage payments, do no allege a breach of the mortgage or any duty arising therefrom. Rather, these claims arise from alleged violations of consumer protection statutes. Accordingly, the Fosters were not required to provide notice and an opportunity to cure.[1]

---

[1] Other district courts have held that substantially similar pre-suit notice requirements are inapplicable to claims brought under consumer protections statutes. *See Belcher v. Ocwen Loan Servicing, LLC*, No. 8:16-CV-690-T-23AEP, 2016 WL 7243100, at *4 (M.D. Fla. Dec. 15, 2016) ("Belcher has a statutory right of action [(FDCPA and FCCPA)] that is independent from the requirement under the mortgage agreement to give pre-suit notice."); *Colon v. Nationstar Mortg., LLC*, No. 1:15-CV-22961-UU, 2015 WL 7422598, at *2 (S.D. Fla. Nov. 17, 2015) ("Nevertheless, even if the notice and cure provision is connected to the mortgage referenced in the Complaint, it cannot be stretched to ensnare pre-suit conduct concerning a consumer protection statute that is not directly connected to the performance of the duties in the Mortgage."); *St. Breux v. U.S. Bank, Nat. Ass'n*, 919 F. Supp. 2d 1371, 1374 (S.D. Fla. 2013) (notice and cure provision of the mortgage contract did not apply to the plaintiff's TILA claim because the claimed TILA violation, that defendant failed to disclose the name of the owner or master servicer upon plaintiff's request, is a violation of a duty owed by reason of TILA, not the mortgage).

### B. *Green Tree had actual knowledge that the Fosters were represented by an attorney*

The FDCPA prohibits debt collectors from communicating "with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer." 18 U.S.C. § 1692c(a)(2).

Similarly, the FCCPA prohibits a debt collector from communicating "with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication." Fla. Stat. § 559.72(18).

The parties agree that Green Tree must have actual knowledge that the Fosters were represented. And Green Tree concedes that it obtained actual knowledge on June 4, 2015. However, the Fosters contend that Green Tree's foreclosure counsel's actual knowledge that the Fosters were represented prior to June 4, 2015 is imputed to Green Tree as a general tenet of agency law. This argument is persuasive.

"Florida case law acknowledges the general principle of agency law that knowledge of, or notice to an agent or employee is imputed to the principal when it is received by the employee within the scope of her employment, and when it is in reference to matters over which the employee's authority extends." *Computel, Inc. v. Emery Air Freight Corp.*, 919 F.2d 678, 685 (11th Cir. 1990).

6

"The only way to communicate actual notice to a corporation is through its agents. Thus, a corporation is held responsible for the knowledge acquired by its agents while acting within the scope of their employment." Am. *Standard Credit, Inc. v. Nat'l Cement Co.*, 643 F.2d 248, 270 (5th Cir. 1981); Restatement (Third) Of Agency § 5.03 (2006) ("Imputation charges a principal with the legal consequences of having notice of a material fact, whether or not such fact would be useful and welcome. If an agent has actual knowledge of a fact, the principal is charged with the legal consequences of having actual knowledge of the fact.").

It is undisputed that the Fosters were represented by an attorney in the foreclosure proceeding, and that Green Tree's foreclosure counsel knew this. On June 7, 2012, Green Tree, through its foreclosure counsel, served its "Reply to Affirmative Defenses of Defendants" in the foreclosure case on the Fosters by and through their attorney, Christie Arkovich. (Dkt. 48-7). And, the account codes Green Tree received from the prior servicer notified Green Tree that the Fosters' account was in foreclosure. And the file Green Tree received included documents from the foreclosure action indicating that the Fosters were represented and identified their counsel.[2] (Ex. C at 19, 24-25 & Ex. 5). Green Tree therefore fails to demonstrate that it did not have actual knowledge that the Fosters were represented prior to June 4, 2015.[3] *See Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1097 (11th Cir. 2017) (actual knowledge may be established through inference) (citing *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1297 (11th Cir. 2013)).[4]

---

[2] In addition, Green Tree also sought a deficiency judgment against the Fosters in the foreclosure case "if the proceeds of the sale [were] insufficient to pay Plaintiffs' claim." (Doc. 76, Ex. D at 4–5).

[3] Notwithstanding, the only communications at issue that occurred prior to June 4, 2015,are the door hanger and the June 2, 2015 voicemail.

[4] The cases cited by Green Tree are either distinguishable or unpersuasive. In *Wright v. Select Portfolio Servicing, Inc.*, No. 8:14-CV-2298-T-30TGW, 2015 WL 419618, at *5 (M.D. Fla. Feb. 2, 2015), the defendant debt collector was not a party to the foreclosure and the foreclosure attorney was not counsel with respect to the collection

## C. *The voicemail and written communications sent directly to the Fosters constitute debt collection communications*

Green Tree contends that the May 22, 2015 call and the June 2, 2015 voicemail were permissible communications because they were not debt collection communications. Green Tree also contends that the written communications – three periodic billing statements, a May 27, 2015 single-point-of-contact letter informing the Fosters of their newly assigned account representative, and two July 13, 2015 letters informing Fosters of their loss mitigation options – were permissible communications because they either complied with federal regulations or were not debt collection communications.

### i. Voicemail

The Fosters do not dispute that Mrs. Foster placed the May 22, 2015 call and do not argue that it violated the law. And, the Eleventh Circuit's recent opinion in *Hart v. Credit Control, LLC*, 871 F.3d 1255 (11th Cir. 2017) forecloses Green Tree's argument that the June 2, 2015 voicemail was not a communication made to collect a debt.

In *Hart*, this Circuit clarified what constitutes a "communication" within the confines of the FDCPA and held that "a voicemail can, and will, be considered a communication under the FDCPA

---

of the debt. *Bacelli v. MFP, Inc.*, 729 F. Supp. 2d 1328, 1334 (M.D. Fla. 2010) declined to impute a creditor's knowledge to a debt collector. *See Cavanaugh v. HSBC Card Servs. Inc.*, No. 3:10-CV-356-HES-TEM, 2010 WL 3746260, at *2 (M.D. Fla. Sept. 22, 2010) (same). *Nordwall v. PNC Mortg.*, No. 2:14-CV-747-FTM-CM, 2015 WL 4095350, at *3 (M.D. Fla. July 7, 2015) conclusorily "agrees with Defendant that Plaintiff's counsel's notice of appearance in a separate action does not constitute actual notice of representation for all-debt related activity." But that finding was immaterial because Defendant also was put on notice that Plaintiff was represented by counsel by the numerous other notices and correspondence. *Id.* at *4. *Wolhuter v. Carrington Mortg. Servs., LLC*, No. 8:15-CV-552-MSS-TBM, 2015 WL 12819153, at *5 (M.D. Fla. Oct. 28, 2015) relies solely on *Wright* and *Nordwall* to conclude that it requires "more than a notice of appearance in a related proceeding to put a debt collector on notice that a debtor is represented by counsel; the debtor and/or her counsel must send correspondence notifying the debt collector that the debtor also is represented with respect to the debt itself." *Erickson v. Gen. Elec. Co.*, 854 F. Supp. 2d 1178, 1182 (M.D. Fla. 2012) is simply inapposite, granting summary judgment for the defendants because the plaintiff "made no effort to offer any evidence to raise a genuine dispute as to any material fact in this case."

8

if the voicemail reveals that the call was from a debt collection company and provides instructions and information to return the call." *Hart*, 871 F.3d at 1258. The court reasoned that "by choosing to omit any qualifier other than requiring that the call must be regarding a debt, Congress meant to allow any information, as long as it regards a debt." *Id.* at *2. "There is no requirement in the statute that the information must be specific or thorough in order to be considered a communication." *Id.*

In *Hart*, the defendant left a voicemail which, in its entirety, stated: "This is Credit Control calling with a message. This call is from a debt collector. Please call us at 866–784–1160. Thank you." *Hart*, 871 F.3d at 1256. The voicemail left by Green Tree in this case was virtually identical and stated: "This is Vince with Green Tree, a debt collector. Please call Green Tree at 1-800-352-7751." As such, the voicemail constitutes a "communication" for purposes of the FDCPA. And, as Green Tree acknowledges, the FDCPA prohibits "communication" with a consumer "in connection with the collection of any debt" if the debt collector "knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address[.]" 15 U.S.C. § 1692c(a)(2).

### ii. Periodic Billing Statements

Green Tree contends that the three billing statements sent between June 2015 and August 2015 were sent in compliance with the Truth in Lending Act and Regulation Z, which require servicers to send periodic billing statements. Green Tree relies on the October 15, 2013 Consumer Financial Protection Bureau (CFPB) Bulletin which states that, in some instances, the debt collector may contact the debtor directly despite the issuance of a cease and desist notice.[5] (Dkt. 77-5, CFPB

---

[5] Section 1692k(e) of the FDCPA, entitled "Advisory Opinions of Bureau," states that no provision of §1692 – the provision under which Plaintiffs have brought their claims – shall apply "to any act done or omitted in good faith in conformity with any advisory opinion of the Bureau."

9

Bulletin 2013-12, Implementation Guidance for Certain Mortgage Servicing Rules). The Bulletin acknowledges a "[s]ervicers' obligation to provide certain notices/communications to borrowers who have exercised their right under the FDCPA barring debt collectors from communicating with them" and that the "FDCPA 'cease communication' option does not generally make servicers that are debt collectors liable under the FDCPA if they comply with certain provisions." (*Id.*) Among the statutory provisions for which a servicer will not be exposed to FDCPA liability are compliance with Regulation X, 12 C.F.R. § 1024.41 (related to loss mitigation) and Regulation Z, § 1026.41 (related to periodic statements). (*Id.*)

The Fosters contend that the Bulletin is inapplicable because they are bringing claims under section 1692c(a)(2), whereas the Bulletin addresses violations of section 1692c(c). They also persuasively argue that Green Tree's billing statements include debt collection language that is not required by either TILA or Regulation X or Z. The billing statements include debt collection language, including payment coupons, due dates, and a notice that "[t]he loan may be reinstated by paying only the reinstatement amount," and informing the reader that he or she may contact Green Tree "for the exact amount required for reinstatement." (Dkt. 76-11).[6] These billing statements therefore constituted debt collection activity.

### iii. Loss Mitigation Letter

Green Tree contends that the July 13, 2015 loss mitigation letter was not an attempt to collect

---

[6] A number of district courts agree that this type of language constitutes debt collection language. *See Kelliher v. Target Nat. Bank*, 826 F. Supp. 2d 1324, 1329 (M.D. Fla. 2011) ("Debt collection language, such as that included in Target's statements, is not among the enumerated items" in TILA and Regulation Z); *Roth v. Nationstar Mortg., LLC*, No. 215CV783FTM29MRM, 2016 WL 3570991, at *7 n.14 (M.D. Fla. July 1, 2016); *Leahy-Fernandez v. Bayview Loan Servicing, LLC*, 159 F. Supp. 3d 1294, 1303 (M.D. Fla. 2016).

a debt.[7] When determining whether a communication is "in connection with the collection of any debt," this Circuit "look[s] to the language of the communication in question—specifically to statements that demand payment and discuss additional fees if payment is not tendered." *Farquharson v. Citibank, N.A.*, 664 F. App'x 793, 801 (11th Cir. 2016), cert. denied, 137 S. Ct. 2303 (2017) (citing *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2014)). For example, statements in a letter demanding full and immediate payment, threats that unless the payment was made attorneys' fees would be added, statements that the law firm was "attempting to collect a debt and was acting as a debt collector" or that the communication was for the purposes of collecting a debt, and references to collection efforts, are demonstrative of a debt collection communication. *Id.*

The loss mitigation letter sent to the Fosters offered the option to inquire about refinancing the debt, modifying the account terms, or applying for a payment forbearance to have "more time to pay [the] monthly payment." (Dkt. 76-12). Moreover, the letter admits that it is "an attempt to collect a debt, and any information obtained will be used for that purpose." It directly relates to the Fosters' debt, and it is apparent that its purpose was to induce them to contact Green Tree to "find a solution" to the default—i.e., make a payment. Given this language and the broad definition of what constitutes a debt collection communication, the July 13, 2015 loss mitigation letter constituted debt collection activity. *See Hart*, 871 F.3d at 1258.[8]

---

[7] Plaintiffs do not argue that the single point of contact letters were debt collection activity.

[8] *Farquharson*, an unpublished decision, is distinguishable in that right after the "debt collector" disclosure, the letter regarding a loan modification stated: "However, the purpose of this communication is to let you know about your potential eligibility for a loan modification program that may help you bring or keep your loan current through affordable payments." 664 F. App'x at 802. It did not state that the defendant was trying to collect a debt.

### iv. Door Hanger

Last, Green Tree contends that the door hanger left on May 22, 2015, advising that it was from Green Tree, stating "URGENT PLEASE CONTACT OUR OFFICE," and providing a toll free number, did not constitute debt collection activity. However, this language is virtually identical to the voicemail and therefore, for the same reasons, constituted debt collection activity. *See Hart*, 871 F.3d at 1258.

### D. *Green Tree is not entitled to the bona fide error defense*

Green Tree contends alternatively that it is entitled to the protection of the *bona fide* error affirmative defense. The FDCPA and FCCPA afford a narrow carve-out to the general rule of strict liability, known as the "*bona fide* error" defense. Section § 1692k provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.[9]

"A debt collector asserting the bona fide error defense must show by a preponderance of the evidence that its violation of the Act: (1) was not intentional; (2) was a *bona fide* error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error." *Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1352–53 (11th Cir. 2009). "As used in the [FDCPA] '*bona fide*' means that the error resulting in a violation was 'made in good faith; a genuine mistake, as opposed to a contrived mistake.'" *Id.* at 1353 (quoting *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 538 (7th Cir. 2005)). "To be considered a *bona fide* error, the debt collector's mistake must be objectively reasonable." *Id.* at 1354.

---

[9] The bona fide error defense as set forth in the FCCPA is substantially similar to that found in the FDCPA. *See* FLA. STAT. § 559.77(3).

The third element, the procedures component of the defense, involves a two-step inquiry. *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1273–74 (11th Cir. 2011) (citations and quotations omitted). The first question is "whether the debt collector 'maintained'—i.e., actually employed or implemented—procedures to avoid errors." *Id.* The second question is "whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Id.* This is a fact-intensive inquiry. *Id.* The Fosters contend that Green Tree cannot satisfy the second and third elements of the defense.

Green Tree maintains policy and procedures which prohibit certain types of communications with consumers who are represented by an attorney. (Derrick Aff. ¶ 15; Derrick Dep. at 92:11-19, 102:20-103:11). Specifically, Green Tree employees are prohibited from contacting a customer directly once Green Tree is notified that the customer is represented by an attorney and the attorney's contact information is verified. (Derrick Aff. ¶¶ 16-19, Ex. 4). However, Green Tree's April, 2015 Customer Contact Policy, which was in effect at the time of the relevant May and June 2015 communications with the Fosters, also permits the employee, after being advised that the customer is represented by an attorney, to resume calls to request valid attorney information if it has not been obtained within 10 days.[10]

As discussed, Green Tree knew that the Fosters were represented by an attorney prior to any of the debt collection communications. These communications therefore violated the FDCPA and

---

[10] The 2015 Customer Contact Policy section entitled "Legal Counsel Representation" states in pertinent part:

> • RESTRICTIONS - Do NOT attempt to contact the customer directly if you know or have been advised they are being represented by legal counsel and the attorney's address and phone number are easily obtainable.
> • If possible, ask the customer for the following information on their attorney: Name, Address, Phone Number.
> • If the attorney's address cannot be obtained within 10 days, the representative may resume calls to request valid attorney information.

(Dkt. 77-1 ¶ 17, Ex. 4).

13

FCCPA. While it is undisputed that Green Tree maintained procedures to avoid errors regarding communication with consumers who are represented, there is no evidence that Green Tree maintained any policies requiring communication with its foreclosure counsel or procedures to review its own foreclosure file to determine whether a borrower is represented. As such, Green Tree has not established the third element of its defense, that its procedures were "reasonably adapted" to avoid communications with a debtor represented by an attorney in the foreclosure proceeding..

In addition, Green Tree does not dispute that two violations of their procedures regarding what to do when a customer informs the employee that they are represented occurred. (Derrick Aff. ¶¶ 28, 36-38). First, during the May 22, 2015 telephone call, the Green Tree employee should have asked Mrs. Foster for the attorney's name and contact information. (*Id.* ¶ 28). Second, on June 4, 2015, Green Tree obtained the name and contact information of the Fosters' attorney, but failed to immediately change the address associated with the Fosters' account to reflect that of the Fosters' attorney. (*Id.* ¶¶ 37-38). As a result, Green Tree sent the Fosters the June, July, and August billing statements and the July 13th loss mitigation letter. (*Id.* ¶¶ 40-42).

Assuming *arguendo* that Green Tree was not on notice of the Foster's representation through the foreclosure proceedings, Green Tree's failure to comply with its own policies and procedures creates a disputed issue of fact as to whether the errors were *bona fide*, that is, whether they were made in good faith or whether they were contrived mistakes.

According to Green Tree's policies and procedures, when a customer advises that they are represented by an attorney, as did Mrs. Foster, the "cease & desist" flag must be checked and all calls must cease. (See Dkt. 77-1, Ex. 4, p. 5).[11] The collector must then verify representation. The only

---

[11] This exhibit was filed under seal with leave of Court.

14

contact that is allowed after the "cease & desist" flag is checked is with the attorney, unless the attorney fails to respond to verify representation after 10 business days or agrees in writing to direct contact with the customer. (*Id.*) Upon being advised that the customer is represented, the employee must not attempt to contact the customer directly if the attorney's address and phone number are easily obtainable, and the employee should, if possible, ask for the attorney's name and contact information. (*Id.* at 12). If the attorney's address cannot be obtained within 10 days, calls may be resumed to request that information. Importantly, however, a "diligent effort" must be made to obtain the attorney's information, including skip tracing, People Search, and the State Bar Association Website. (*Id.*)

There is no evidence that Green Tree made any effort to obtain the Foster's attorney's information other than to leave a voicemail ten days after being advised by Mrs. Foster that she had an attorney. And, the Foster's account was flagged to prevent any additional phone calls to them, even though the address was not changed. Yet, Green Tree sent the Fosters four separate debt collection letters. It cannot, at this stage, be said that Green Tree or its representative made a "diligent effort" to obtain the Foster's attorney's information, despite the requirement that they do so, or that its procedures were reasonably adapted to avoid these specific errors. *See, e.g., Lynch v. Fin. Recovery Servs. of Minnesota, Inc.*, No. 12-60945-CIV, 2013 WL 11971263, at *4 (S.D. Fla. Sept. 30, 2013) (procedures were not reasonably adapted to avoid the specific error since the plaintiff allegedly received two non-compliant messages); *Salazar v. MFP, Inc.*, 847 F. Supp. 2d 1329, 1332–33 (M.D. Fla. 2012) (where here were further measures the defendant could have taken to prevent the violation complained of, a jury could conclude that the procedures were not reasonably adapted to avoid the violations of the FDCPA); *Alvarado v. Credit Prot. Ass'n, L.P.*, No.

15

8:14-CV-447-T-33TGW, 2015 WL 1815863, at *8 (M.D. Fla. Apr. 22, 2015) (issues of fact regarding whether the defendant could have taken further measures to prevent the alleged violation precluded summary judgment).

In sum, for purposes of summary judgment, Green Tree fails to demonstrate by a preponderance of the evidence that its mistake in communicating directing with the Fosters was objectively reasonable or that it maintained procedures reasonably adapted to avoid the specific errors, and therefore fails to establish the elements of this defense.

Accordingly, Green Tee Servicing, LLC's Motion for Summary Judgment (Dkt. 77) is **DENIED**.

**DONE AND ORDERED** this 2nd day of November, 2017.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record