UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRACY FOSTER and CORNELL
FOSTER,

    Plaintiffs,

v.                                          Case No: 8:15-cv-1878-T-27MAP

GREEN TREE SERVICING, LLC,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** are Plaintiffs' Motion for Class Certification (Dkt. 75), Defendant's response (Dkt. 87), and Plaintiffs' reply (Dkt. 93). Upon consideration, Plaintiffs' Motion is DENIED.

**I.    INTRODUCTION**

The Fosters bring this action on behalf of themselves and a class of consumers in Hillsborough County, Florida, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692c(a)(2) and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72. They allege that Green Tree attempted to collect a debt while knowing they were represented by counsel (Amended Complaint, Dkt. 25 ¶¶ 32-46), and that Green Tree has an internal policy to continue contacting a debtor although it knows the debtor to be represented by an attorney (*id.* ¶¶ 3, 36, 44).

In May 2006, The Fosters executed a mortgage in favor of New Century Mortgage Corporation, for the purchase of real property in Hillsborough County, Florida, secured by a Note in the amount of $267,000. (Affidavit of Stewart Derrick, Dkt. 77-1, ¶ 10, Ex. 1). In December 2008, The Fosters defaulted on their mortgage payments and have not made any payments since August

2008. (Amended Complaint, Dkt. 25, ¶ 26). On October 20, 2008, a foreclosure action was filed by the servicer of the loan, Litton Loan Servicing, L.P. (Foreclosure Complaint, Dkt. 77-2). The Fosters were represented by attorney Christie Arkovich throughout the foreclosure proceeding, which concluded in 2015.

On January 1, 2011, Green Tree obtained the servicing rights from Litton and began servicing the loan. (Derrick Aff. ¶ 13). In August 2011, Green Tree was substituted as the plaintiff in the foreclosure action. (Foreclosure case docket sheet, Dkt 48-6). On July 20, 2012, Green Tree was assigned the mortgage, which was recorded in the Office of Public Records of Hillsborough County on August 6, 2012 at Book 21288, Page 705. (Derrick Aff. ¶¶ 11-12, Exs. 2 and 3).

On May 22, 2015, Mrs. Foster found a "door hanger" flier stuck in the door of their house, which requested that the Fosters contact Green Tree, and providing an 800 number. The flier prompted her to call Green Tree. (Dkt. 77-6; Tracy Foster Dep., Dkt. 77-3 at 73:16-76:2). During this call, Mrs. Foster stated that she and her husband were represented by an attorney and that Green Tree should communicate only with their attorney. She did not provide the name of the attorney or contact information, and Green Tree did not ask for it. (Deposition of Tracy Foster, Dkt. 77-3 at 49:18-50:17). On June 2, 2015, "Vince," a Green Tree employee, left a voicemail for the Fosters, which stated: "This is Vince with Green Tree, a debt collector. Please call Green Tree at 1-800-352-7751." (Derrick Aff. ¶¶ 32-35). This call was made in accordance with Green Tree's policy, which required a ten-day waiting period after being told the borrower was represented, before contacting the borrower to obtain the attorney's contact information. (Derrick Aff. ¶¶ 34-35). On June 4, 2015, Green Tree's foreclosure counsel provided Green Tree the name and contact information of the Foster's attorney. (Derrick Aff. ¶ 37).

2

Green Tree's policies and procedures require employees, after obtaining the attorney name and contact information for a borrower represented by counsel, to change the mailing address on the account to the attorney's address so that future correspondence is sent to the attorney, not the borrower. (Derrick Aff. ¶ 36). This was not immediately done with the Foster's account after Green Tree received the contact information for their attorney. (Derrick Aff. ¶ 38).

Notwithstanding having been advised that the Fosters were represented by counsel, Green Tree sent them three monthly billing statements on June 15, July 16, and August 15, 2015, a Single Point of Contact Notification letter that provided contact information for their newly assigned account representative, and Loss Mitigation letters on July 13 and July 14, 2015. (Derrick Aff. ¶¶ 39-42, Exs. 8-10). On August 23, 2015, after Green Tree was served with the Complaint in this action, the address on the Foster's account was changed to the address of their new attorneys, Centrone and Shrader, and all subsequent communication was sent to them. (Derrick Aff. ¶¶ 45-46).

Plaintiffs request certification of the following FCCPA class and FDCPA subclass:

> **FCCPA Class:** All individuals in Hillsborough County, Florida: (1) who had a mortgage loan serviced by Green Tree that was incurred primarily for personal, family, or household purposes, (2) who were represented by counsel regarding the mortgage debt, (3) and whom Green Tree contacted directly in an attempt to collect the mortgage debt after it was notified they were represented by counsel, (4) on or after August 12, 2013.
>
> **FDCPA Subclass:** All individuals in Hillsborough County, Florida: (1) who had a mortgage loan serviced by Green Tree that was incurred primarily for personal, family, or household purposes, (2) that Green Tree acquired after it was in default, (3) who were represented by counsel regarding the mortgage debt, (4) and whom Green Tree contacted directly in an attempt to collect the mortgage debt after it was notified they were represented by counsel, (5) on or after August 12, 2014.

## II. CLASS CERTIFICATION STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on

behalf of the individual named parties only.' " *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, ——, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). Accordingly, the burden of establishing the propriety of class certification rests with the advocate of the class. *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003); *Jones v. Diamond,* 519 F.2d 1090, 1099 (5th Cir.1975).

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.'" *Little v. T-Mobile USA, Inc.,* 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)). The class definition must contain objective criteria that allow for class members to be identified in an administratively feasible way, meaning a "manageable process that does not require much, if any, individual inquiry." *See Bussey v. Macon Cnty. Greyhound Park, Inc.,* 562 F. App'x. 782, 787 (11th Cir. 2014).

Once it is determined that the proposed class is ascertainable, a class may be certified only if (1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims of the representatives are typical of the claims of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly. Fed. R. Civ. P. 23(a). These prerequisites to class certification are referred to as "numerosity, commonality, typicality, and adequacy of representation," and are "designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims." *Prado–Steiman ex rel. Prado v. Bush,* 221 F.3d 1266, 1278 (11th Cir. 2000).

In addition to the requirements of Rule 23(a), at least one of the three alternative subsections

4

of Rule 23(b) must be satisfied to certify a class. *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009). Plaintiffs seek certification under Rule 23(b)(3), which requires them to demonstrate (1) that questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Id.* Failure to establish any of the required elements of Rule 23(a) or Rule 23(b)(3) precludes class certification. *Valley Drug*, 350 F.3d at 1188 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615–18, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

Evidentiary proof is required to show compliance with Rule 23. *Comcast Corp. v. Behrend*, — U.S. —, —, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) (quoting *Dukes*, 131 S.Ct. at 2551–52). The party seeking class certification must prove compliance by a preponderance of the evidence. *See Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2009); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). Even where the parties have not contested an element of Rule 23, "a court nevertheless has the responsibility of conducting its own inquiry as to whether the requirements of Rule 23 have been satisfied in a particular case." *Valley Drug*, 350 F.3d at 1188.

### III. DISCUSSION

#### A. Standing

Prior to certification of a class, and before undertaking any formal typicality or commonality review, "the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *Prado–Steiman*, 221 F.3d at 1279. The Fosters assert their

individual and class claims under the FDCPA and FCCPA based on their statutory right not to be contacted directly after Green Tree learned they were represented by counsel. In response, Green Tree argues that they lack standing because they have not personally suffered injury, and therefore cannot demonstrate a "tangible economic injury." This argument is not persuasive.

This Circuit has held that a deprivation of a plaintiff's statutorily-created right to information under the FDCPA is sufficient to allege a concrete and personalized injury. *See Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016). The Court reasoned that because the FDCPA creates a private right of action and requires debt collectors to include certain disclosures in an initial communication with a debtor, or within five days of the communication, Congress "created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures." *Id.*

Section 1692c of the FDCPA, which the Fosters seek to enforce, prohibits attempts to collect a debt directly from a debtor when the creditor has actual knowledge that the debtor is represented by counsel. Here, it is undisputed that Green Tree sent debt collection communications directly to the Fosters, knowing they were represented by an attorney. Like sections 1692e and 1692g, which establish rights, section 1692c establishes the right not to receive direct communication in the collection of a debt, other than through an attorney. *See Church*, 2016 WL 3611543, at *3. Green Tree's communications with the Fosters constitutes a real injury, and they therefore have standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016).

**B.** **Rule 23(a)**

  *i.* *Ascertainability*

As discussed, the Fosters' class definitions must include objective criteria that allow for class members to be identified through a "manageable process that does not require much, if any, individual inquiry." *See Bussey*, 562 F. App'x. at 787. "A plaintiff cannot establish ascertainability simply by asserting that class members can be identified using the defendant's records; the plaintiff must also establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible." *See Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 948 (11th Cir. 2015).

Green Tree maintains thousands of customer files which the Fosters suggest would be administratively feasible to review to determine which of the customers qualify as class members. During the course of discovery, in an attempt to determine the size of the potential class, Green Tree provided the Fosters with a spreadsheet of 624 loans that met the geographic and time period criteria, and have been marked with a "cease communication" flag. (Dkts. 87 at 4-5, 75 at 7). To obtain a sampling of the files, Green Tree conducted a file-by-file review of 62 files, approximately 10%, to determine how many of those customers would fit the proposed class definition.(Derrick Dep., Ex. 14). The spreadsheet indicates that with respect to 28 of the 62 files, Green Tree was aware that the customer was represented by counsel but contacted the customer directly. (*Id.*) And in 17 of the files, the customer was in default when Green Tree acquired the loan, and Green Tree contacted the customer directly. (*Id.*)

However, according to Green Tree, a file may have a "cease communication" flag for a number of reasons, one of which is that the customer notified Green Tree that they were represented by counsel. (Derrick Dep. at 91:4-92:8, 94:25-99:6). The only way for Green Tree to determine why the file is flagged is to conduct an individual, loan-by-loan, review. (*Id*). And the list could include

individuals with whom Green Tree was permitted to communicate directly, despite the file being flagged. Finally, some files may not have been flagged when they should have been.

The Fosters suggest that it is administratively feasible for Green Tree to conduct a file-by-file review of the remaining 90% of the files to determine which customers would qualify as class members. However, that would require Green Tree to conduct a loan-by-loan review of approximately 560 files, including service notes, call recordings, and correspondence, to determine whether Green Tree had actual knowledge that the customer was represented by counsel, the dates it acquired knowledge, whether Green Tree had contact information for the attorney and contacted or attempted to contact the attorney, whether the attorney responded to Green Tree's communications, whether the attorney consented to Green Tree communicating directly with the customer, whether the attorney failed to respond to Green Tree's inquiry and, if so, for what period of time (i.e., thirty days, a "reasonable" period of time, or some other period of time and whether such time frame was reasonable under the circumstances), whether there were additional communications between Green Tree and the customer and, if so, whether the communications were initiated by the customer or Green Tree, and whether the communications were made in connection with the collection of a debt or other permissible communications.

It is apparent that Plaintiffs' proposed undertaking would require a highly individualized inquiry. I find, therefore, that the potential class members cannot be identified in an administratively feasible way.[1] That is, the proposed undertaking is not a "manageable process that does not require much, if any, individual inquiry." *See Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x.

---

[1] Indeed, the motions for summary judgment regarding the Fosters' claims demonstrate the individualized nature of these inquiries.

782, 787 (11th Cir. 2014).

As the Fosters point out, there is a circuit split on whether Rule 23 imposes an implicit ascertainability requirement. Regardless, as will be discussed, they cannot establish commonality or predominance prong. Accordingly, their motion is due to be denied.

### ii. *Commonality*

Commonality typically "refers to the group of characteristics of the class." *Prado–Steiman*, 221 F.3d 1266, 1279 (11th Cir. 2000). To satisfy commonality, "a class action must involve issues that are susceptible to class wide proof." *Cooper v. Southern. Co.*, 390 F.3d 695, 714 (11th Cir. 2004), *overruled on other grounds, Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006)). Here, commonality has not been established.

The Fosters' claims and those of the potential class members do not arise from a single or uniform form of communication. Rather, the communications varied, including door hangers, voicemails, billing statements, and letters. And, as the motions for summary judgment make clear, any liability arising from those communications is dependant on the content of the communication.[2] The central issue of liability is therefore not susceptible to class wide proof. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("capable of classwide resolution—which means that determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke").

### C. Rule 23(b)

#### i. *Predominance*

---

[2] The Fosters seemingly acknowledge this: "The Court and a jury can decide which of these communications violate the FDCPA and FCCPA, which in turn will determine whether the customers who received those communications may recover damages." (Dkt. 93 at p. 4).

Under Rule 23(b)(3), questions of law or fact common to the members of the class must predominate over questions affecting only individual members. Common questions of law or fact predominate if "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, [ ] predominate over those issues that are subject only to individualized proof." *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir.1989) (citations omitted). Determining whether common issues predominate over individual issues requires an analysis of the elements of the underlying claim. *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011).

Although the Fosters need not show that each element of their claims are subject to common proof,[3] whether common issues predominate over individual issues "can only be determined after considering what value resolution of the class-wide issue will have in each class member's underlying cause of action." *Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000). "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) (citations omitted).

As discussed, it is apparent that individualized inquiry would be required to establish the proposed class members claims, including *inter alia* whether the communications were debt collection activity, whether Green Tree had actual knowledge that the class members were represented by counsel, yet communicated directly with them, and whether Green Tree had obtained consent to communicate directly with the class member. And Green Tree's *bona fide* error defense

---

[3] *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S.Ct. 1184, 1196 (2013).

would similarly require individualized inquiry and evidence, since the inquiry would involve issues including the specific error complained of was, whether the error was made in good faith, and whether Green Tree's procedures were reasonably adapted to avoid the specific error.[4] Accordingly, it cannot be said that he class issues predominate over the individual issues with respect to the proposed class member claims and Green Tree's defense. And it follows that the Fosters have not established that a class action is superior to other available methods for the fair and efficient adjudication of the controversy under Rule 23(b)(3).

## IV. CONCLUSION

Accordingly, Plaintiffs' Motion for Class Certification (Dkt. 75) is **DENIED**.

**DONE AND ORDERED** this 15th day of November, 2017.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[4] *See Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1352–53 (11th Cir. 2009).